WILLIAM NATHAN GARNER v. STATE OF NORTH CAROLINA

No. 699SC545

(Filed 27 May 1970)

**1. Criminal Law § 159—   record on appeal —— failure to place proceed-
ings in correct order — failure of documents to show filing date**

Record does not comply with Court of Appeals Rule 19 where the pro-
ceedings are not set forth therein in the order of time in which they
occurred and are not arranged so as to follow each other in the order
in which they were filed, and the documents included in the record do not
plainly show the date on which they were filed.

**2. Criminal Law §§ 23, 135;   Constitutional Law § 29;   Homicide §§
13, 31—   first degree murder — guilty plea — coercive effect of
death penalty**

The punishment for first degree murder provided by G.S. 14-17 does
not constitute coercion so as to render void defendant's plea of guilty of
first degree murder tendered and accepted pursuant to the provisions of
G.S. 15-162.1 as it existed prior to its repeal in 1969.

CERTIORARI was allowed upon motion of the State from an order
of *Bailey, J.,* awarding defendant a new trial on 29 June 1969.

*Attorney General Morgan and Staff Attorney Shepherd for the
State of North Carolina.*

*Watkins & Edmundson by R. Gene Edmundson for William
Nathan Garner.*

MALLARD, C.J.

At the April 1964 Session of Superior Court held in Granville
County, William Nathan Garner (Garner) was charged in a bill of
indictment with the crime of murder in the first degree. Pursuant to
the provisions of G.S. 15-162.1, the defendant and his counsel ten-
dered in writing, signed by Garner and his attorney, a plea of guilty
of such crime; and the State, with the approval of the court, ac-
cepted such plea. Garner was thereupon sentenced to imprisonment
for life in the State's prison.

[1]   The record in this case does not comply with the provisions of
Rule 19 of the Rules of Practice in the Court of Appeals in that
the proceedings are not set forth therein in the order of time in
which they occurred and are not arranged so as to follow each other
in the order in which they were filed. In fact, an amendment to one
of the petitions filed by Garner on 27 June 1969 appears beginning

on page 29 of the record, and the very same amendment appears again beginning on page 60 of the record.

Rule 19 of the Rules of Practice in the Court of Appeals also requires that documents included in the record shall plainly show the date on which they were filed. Beginning on page 26 of the record, there appears what purports to be an "Amended Petition for Post Conviction Hearing," which has no filing date thereon, which was verified on 18 September 1967, and is located in the record between an instrument showing a filing date of 9 January 1969 and another instrument showing a filing date of 27 June 1969. This latter instrument appears before a judgment by Gambill, J., which has no filing date shown but has a signatory date of 19 July 1968.

In the condition of this record, it has been extremely difficult to determine the chronological order of events in this proceeding.

However, it does appear that at the April 1968 Session of Superior Court of Granville County, Gambill, J., was presiding and held a post-conviction hearing on a petition filed by Garner. After the hearing, the following judgment was entered:

"This cause coming on to be heard before the undersigned Judge Presiding at the April 1, 1968, Criminal Session of Superior Court of Granville County by virtue of a petition heretofore filed in this cause by the petitioner, William Nathan Garner, under the provisions of G.S. 15-217, et seq. it appearing wherein the petitioner alleges that certain of his constitutional rights were violated in the trial of the case at the April 1964 Criminal Session of Superior Court of Granville County, wherein the defendant received a sentence of life imprisonment for the charge of murder in the first degree, and the petitioner was personally present in court with his counsel, R. Gene Edmundson, Esquire, and the State being represented by the Honorable W. H. S. Burgwyn, Jr., Solicitor of this District, and after hearing the testimony of the petitioner and his witnesses and after hearing arguments by counsel for the petitioner and counsel for the State, the court finds the following facts:

1. That the defendant, William Nathan Garner, was charged in a warrant in the Recorder's Court of Granville County issued February 13th, 1964, wherein he was charged on or about the 9th day of February 1964 did unlawfully, wilfully and feloniously, with force and arms and with malice aforethought, and with premeditation and deliberation, with a deadly weapon, to-wit, a knife, kill, slay, and murder one William (Billie) Dean; that defendant, William Nathan Garner appeared in

said Recorder's Court without counsel and was ordered held in the Granville County Jail without privilege of bond until the next Criminal Term of Superior Court of Granville County.

2. That the defendant, **William Nathan Garner, was indicted** under a bill of indictment returned by the Grand Jury of Granville County at the April, 1964 Session of Superior Court of Granville County, wherein he was charged on or about the 9th day of February, 1964 with force and arms, at and in the said county, feloniously, wilfully, and of his malice aforethought, did kill and murder William (Billie) Dean.

3. That it was stipulated by the petitioner through his counsel and the State, through its Solicitor, that according to the tax scrolls of Granville County and from comparing the same with the juries drawn from the jury box from July Term 1958 through the list drawn for Term of Court, October, 1964, that by exhibit one, a certified copy of the jury list for the July Term, 1958, of the Superior Court of Granville County that forty-eight (48) jurors were drawn, forty-two (42) of whom were members of the White race, and six (6) of whom were members of the Negro race; that exhibit two, a certified copy of the jury list for the November, 1958, Term of Superior Court of Granville County that twenty-eight (28) jurors were drawn, twenty-four (24) of whom were members of the White race, and four (4) of whom were members of the Negro race; that exhibit three, a certified copy of the jury list for the January, 1959 Term of the Superior Court of Granville County, that forty-five (45) jurors were drawn, forty-two (42) of whom were members of the White race, and three (3) of whom were members of the Negro race; that by exhibit four, a certified copy of the jury list for the April, 1959 Term of the Superior Court of Granville County that twenty-nine (29) jurors were drawn, twenty-six (26) of whom were members of the White race, and three (3) of whom were members of the Negro race; that by exhibit five, a certified copy of the jury list for the July, 1959 Term of Superior Court of Granville County that forty (40) jurors were drawn, thirty-six (36) of whom were members of the White race and four (4) of whom were members of the Negro race; that by exhibit six, a certified copy of the jury list for the November, 1959 Session of the Superior Court of Granville County that twenty-nine (29) jurors were drawn, of whom twenty-six (26) were of the White race, and three (3) of whom were members of the Negro race; that by exhibit seven, a certified copy of the jury list for the January, 1960 Term of the Superior Court of Gran-

ville County that forty-six (46) jurors were drawn, of whom forty-five (45) were members of the White race, and one (1) of whom was a member of the Negro race; that by exhibit eight, a certified copy of the jury list for the April, 1960 Term of the Superior Court of Granville County, twenty-eight (28) jurors were drawn, twenty-four (24) of whom were members of the White race and four (4) of whom were members of the Negro race; that by exhibit nine, a certified copy of the jury list for the July, 1960 Term of Superior Court of Granville County, thirty-nine (39) jurors were drawn, thirty-eight (38) of whom were members of the White race and one (1) of whom was a member of the Negro race; that by exhibit ten a certified copy of the jury list for the November, 1960 Term of the Superior Court of Granville County, thirty (30) jurors were drawn, twenty-six (26) of whom were members of the White race, and four (4) of whom were members of the Negro race; that by exhibit eleven a certified copy of the jury list for January, 1961, forty-five (45) jurors were drawn, forty (40) of whom were member of the White race and five (5) of whom were members of the Negro race; that by exhibit twelve, a certified copy of the jury list for the April, 1961 Term of Superior Court of Granville County, twenty-nine (29) jurors were drawn, twenty-four (24) of whom were members of the White race and five (5) of whom were members of the Negro race; that by exhibit thirteen, a certified copy of the jury list for the July, 1961 Term of Superior Court of Granville County, forty-seven (47) jurors were drawn, thirty-nine (39) of whom were members of the White race and eight (8) of whom were members of the Negro race; that by exhibit fourteen, a certified copy of the jury list for the November, 1961 Term of Superior Court of Granville County, twenty-eight (28) jurors were drawn of whom twenty-seven (27) were members of the White race and one (1) of whom was a member of the Negro race; that by exhibit fifteen, a certified copy of the jury list for the January 1962 Term of Superior Court of Granville County, forty-seven (47) jurors were drawn, forty-two (42) of whom were members of the White race and five (5) of whom were members of the Negro race.

That by exhibit sixteen, a certified copy of the jury list for the April 1962 Term of Superior Court of Granville County thirty (30) jurors were drawn, twenty-eight (28) of whom were members of the White race and two (2) of whom were members of the Negro race; that by exhibit seventeen, a certified copy of the jury list for the July, 1962 Term of Superior Court of Gran-

ville County, forty-nine (49) jurors were drawn, forty-four (44) of whom were members of the White race, and three (3) of whom were members of the Negro race; that by exhibit eighteen, a certified copy of the jury list for the November, 1962, Term of Superior Court of Granville County, twenty-nine (29) jurors were drawn, twenty-seven (27) of whom were members of the White race and two (2) of whom were members of the Negro race; that by exhibit nineteen, a certified copy of the jury list for the January, 1963 Term of Superior Court of Granville County, forty-five (45) jurors being drawn, forty-one (41) of whom were members of the White race and four (4) of whom were members of the Negro race.

That by exhibit twenty, a certified copy of the jury list for the April, 1963 Term of Superior Court of Granville County, thirty (30) jurors were drawn, thirty (30) of whom were members of the White race and no members of the Negro race; that by exhibit twenty-one, a certified copy of the jury list for July, 1963, forty-eight (48) jurors were drawn, forty-two (42) of whom were members of the White race and six (6) of whom were members of the Negro race; that by exhibit twenty-two, a certified copy of the jury list for the November, 1963 Term of Superior Court of Granville County, twenty-nine (29) jurors were drawn, twenty-eight (28) of whom were members of the White race and one (1) of whom was a member of the Negro race; that by exhibit twenty-three, a certified copy of the jury list for the January, 1964 Term of Superior Court of Granville County, seventy-eight (78) jurors were drawn, seventy-five (75) of whom were members of the White race and three (3) of whom were members of the Negro race; that by exhibit twenty-four, a certified copy of the jury list for the April, 1964 Term of Superior Court of Granville County, sixty (60) jurors were drawn, of whom fifty-nine (59) were members of the White race and one (1) of whom was a member of the Negro race.

That by exhibit twenty-five, a certified copy of the jury list for the July, 1964 Term of Superior Court of Granville County, being the regular jury panel and a special venire, one hundred twenty-three (123) jurors were drawn, one hundred sixteen (116) of whom were members of the White race, and seven (7) of whom were members of the Negro race; that by exhibit twenty-six, a certified copy of the jury list for the October, 1964 Term of Superior Court of Granville County, thirty (30) jurors were drawn, thirty (30) of whom were members of the White race and no members of the Negro race; that it was stipulated by the

petitioner through his counsel and the State, through its Solic-itor, that the 1960 census for Granville County shows that the total population was 33,110 people, that of this 33,110, 16,245 were male, that 16,865 were female; that these figures are fur-ther broken down to show that there were 8,954 White males, that there were 9,435 White females, that there were 7,430 non white females and that there were 7,291 non white males; that there was in the 1960 census 18,580 people over the age of 21 years, that this figure was broken into 8,846 males, 9,734 fe-males. The male population is broken down as follows: it shows that there were 5,418 white males over the age of 21, that there were 6,166 white females over the age of 21, that there were 3,428 non white males over the age of 21 and that there were 3,568 non white females over the age of 21.

It is further stipulated by the petitioner and the State that there are nine townships in Granville County, to-wit: Fishing Creek, Brassfield, Dutchville, Tally Ho, Walnut Grove, Oak Hill, Sassafrass Fork, Salem and Oxford, and that the official tax scrolls for each of said townships for the years 1962 and 1964 contain the names of all white taxpayers in one section of the scrolls for each township and that the names of all colored taxpayers are in a different section within said book.

It is stipulated by the counsel for the petitioner and the So-licitor for the State that the 1962 tax scrolls for Granville County shows that there were 6,551 white persons who listed taxes and that there were 3,496 colored persons who listed their taxes making a total of 10,047 tax listers for the year 1962; that the number of whites is 65.2 per cent of the total and the num-ber of colored tax listers is 34.8 per cent.

It is further stipulated by the counsel for the petitioner and the solicitor for the State that the 1964 tax scrolls for Granville County shows that there were 6,771 white persons who listed taxes and that there were 3,466 colored persons who listed their taxes making a total of 10,237 tax listers for the year 1964, that the number of white is 66.1 per cent of the total and the num-ber of colored tax listers is 33.9 per cent.

It is stipulated by the counsel for the petitioner and the solic-itor for the State that the official minutes of the meeting of the County Commissioners as relates to the constitution of the jury box show: 'As required by law G.S. 9-2, a new jury list was checked by the county commissioners in their respective dis-tricts and names typed by the Clerk to the Board during the

month of 6-1963. These names were reviewed again by the county commissioners who ordered the county attorney to empty the jury box of all names drawn for jury service during the past two years, and this was done by the attorney to the Board, W. M. Hicks. Upon motion of Commissioner S. M. Watkins, seconded by Commissioner Henry Currin and unanimously carried, these names checked from the 1962 tax books were ordered to be placed in the jury box by the chairman of the Board of County Commissioners and this was done with the Commissioners stating that these names constituted the jury list as checked by them and in accordance with the law for the next two years.'

It is stipulated by the counsel for the petitioner and the solicitor for the State that there is nothing in the jury box on the slip bearing the name that indicates race.

4. That the petitioner alleges in the petition that he was deprived of his constitutional rights as guaranteed to him by the Constitution of the United States of America and the Constitution of the State of North Carolina in that:

(1)    Upon petitioner's arrest by the Person County Sheriff's Department on February 13, 1964 (Exhibit A) for first degree murder, he was delivered to the Granville County Sheriff's Department and placed in the Granville County jail.

(2)    He was not advised of his rights to remain silent, that any statement he might make would be used against him at the trial, that he had a right to have assistance of counsel, nor of any other constitutional rights due him;

(3)    That the petitioner unknowingly and without assistance of counsel waived preliminary hearing on February 14, 1964.

(4)    That counsel, Royster and Royster, Attorneys at Law, Oxford, N. C., was appointed for the petitioner on the day of April 6, 1964, when the case came on to be heard in Superior Court, Granville County, N. C., and the trial was commenced on April 8, 1964, after only brief consultation with the petitioner, and the petitioner was denied a reasonable time or opportunity to prepare his defense; with the lack of opportunity being cited in the petition as follows:

(a)    No motion for a continuance.

(b)    No motion to quash indictment on basis of discrimination in jury selection.

(c)  Appointed counsel's suggestion of plea bargaining despite Petitioner's continued denial of guilt.

(d)  No opportunity to obtain witnesses in behalf of petitioner.

(3)  (sic) No motion was made for a special venire from another county.

5.  It is stipulated and agreed between counsel for the petitioner and the solicitor for the State that the following exhibits are made a part of the record:

Exhibit A, being warrant in Case #14,590, Granville County Recorder's Court, State v. William Nathan Garner, Rt. #1, Oxford, N. C., on a charge of First Degree Murder, received Feb. 13, 1964, and executed Feb. 13, 1964.

Exhibit B, being bill of indictment in case #28,434, State v. William Nathan Garner, charging murder, April Term, 1964 Granville County Superior Court, signed W. H. S. Burgwyn, Solicitor.

Exhibit C, being 3 pages of written plea in records of Case #28,-434, April 1964 Term of the Superior Court of Granville County, the first page being plea signed by defendant William Nathan Garner, the second page being the acceptance of such plea on behalf of the State by W. H. S. Burgwyn, Jr., Solicitor and the third page being the acceptance of said plea on behalf of the Court by the Honorable Henry A. McKinnon, Jr., Judge Presiding, said plea having been accepted on April 8th, 1968.

6.  It is stipulated that the cause came on for trial at the April, 1964 Term of Superior Court of Granville County with the Honorable Henry A. McKinnon, Jr., Judge Presiding and the Solicitor, Honorable W. H. S. Burgwyn, Jr., appearing for the State. It is further stipulated that the firm of Royster and Royster, Attorneys of Granville County, North Carolina were appointed attorneys of record on April 6, 1964; it is further stipulated and agreed that according to the official court minutes for the Superior Court of Granville County, North Carolina, the petitioner was duly arraigned on April 6th, 1964; further, that upon plea being tendered and accepted on April 8, 1964, judgment was pronounced. According to law, petitioner was given a life sentence to the North Carolina State Prison Department. It is further stipulated and agreed that no exception or notice of appeal was given and none was perfected to the Supreme Court of North Carolina; further, counsel stipulate that the records, being the official minutes of the Superior Court of

Granville County, show that there was no motion for continuance made at the time counsel was appointed and said plea was tendered and accepted; further, there was no motion to quash the indictment on the basis of discrimination in the jury selection and that there was no motion for a special venire.

7.   Further, let the record show that on September 2, 1967, the petitioner filed in the office of the Clerk of Superior Court of Granville County an amended petition for a Post Conviction Hearing alleging among other things that he is restrained of his liberty and the petitioner alleges that he was denied due process of law and his right for a fair trial as reflected in the following language: 'the atmosphere of hostility which existed in the community, which was greatly exaggerated by the fact that the defendant was a Negro and the deceased was a White man; further, that the selection method of jurors for Granville County constituted a prima facie case of purposeful racial discrimination and thereby deprived the petitioner of the equal protection of the law and due process guaranteed by the Fourteenth Amendment to the United States Constitution.' Further, 'that the petitioner was not a man of letters and not familiar with the niceties of the law, and that the petitioner did not ever knowingly or intentionally waive any of his constitutional rights under the Constitution of North Carolina or the United States Constitution', and prays the court that he be released from Prison on the basis of the violation of the petitioner's constitutional rights, and that he be granted a new trial, and for such other and further relief as the court deems proper.

8.   That the petitioner in propria persona and through his counsel state in open court that he is making no claim of any violation of his constitutional rights other than those alleged in the petition.

9.   That upon inquiry by the presiding judge the petitioner and his counsel stated that there was no further evidence on behalf of the petitioner; that the petitioner and respondent have had a full and plenary hearing as to their respective rights and contentions.

10.   That counsel for the petitioner and solicitor for the State agreed in open court that this judgment may be signed out of the District; out of the Term and out of the County.

11.   The court finds as a fact that the defendant in open court, during the April, 1964 Session of Superior Court in Granville County, tendered to the court his written plea of guilty to mur-

der in the first degree, which plea the State accepted; that the presiding judge asked the following questions which were answered as follows by the defendant:

COURT:  Garner, will you stand up, please. (Defendant Garner stands)

COURT:  You understand that by this plea of guilty that the sentence required by the law is life imprisonment?

MR. GARNER:  Yes, sir.

COURT:  You understand fully what you are charged with?

MR. GARNER:  Yes, sir.

COURT:  Have you talked with your lawyer?

MR. GARNER:  Yes, sir.

COURT:  They have advised with you and are you satisfied with the advice they have given you?

MR. GARNER:  Yes, sir.

COURT:  And understand it?

MR. GARNER:  (Nods head up and down.)

COURT:  No promises have been made to you or threat against you about it, have they?

MR. GARNER:  No. sir.

COURT:  Messrs. Royster, you have investigated the matter and are satisfied this is a proper plea to enter and advised him fully of the consequences, is that correct?

MR. S. S. ROYSTER:  Yes, sir.

COURT:  All right. (To Garner) Have a seat. Plea accepted by the court.

The court further finds as a fact that the petitioner, during the April, 1964, Session of Superior Court of Granville County, was ably represented by competent and qualified counsel.

The court further finds as a fact that the petitioner during the April 1964 Session of Superior Court of Granville County was ably advised of his constitutional rights; that there was no atmosphere of hostility as alleged in his petition; that there were no witnesses to the crime with which petitioner was charged and that all witnesses were subpœnæd which petitioner requested to be subpœnæd.

The court further finds as a fact that the petitioner by his voluntary plea of guilty waived any right of objections he had to the constitution of the jury box either grand or petit, and that no denial of constitutional rights has been found.

IT IS NOW THEREFORE, ORDERED, ADJUDGED AND DECREED that the relief prayed for by the petitioner in his amended petition filed September 20, 1967, in the office of the Clerk of the Superior Court of Granville County be and the same is hereby DENIED; and that the judgment of the court heretofore entered in said case is legal, valid and constitutional and was entered in full compliance with all the petitioner's rights; and that petitioner's imprisonment is legal, valid and proper and in compliance with the Constitution of the United States and the by-laws and Constitution of the State of North Carolina.

IT IS FURTHER ORDERED that a copy of this order be forwarded to the Commissioner of the Department of Corrections, 831 W. Morgan St., Raleigh, N. C., to the petitioner and to petitioner's counsel."

Thereafter on 12 September 1968, Garner filed a petition for certiorari in the Court of Appeals which was denied on 1 October 1968.

It appears from the filing dates in the record that thereafter on 9 January 1969 Garner filed what he called "Petition for a Writ of Habeas Corpus in Forma Pauperis (For a Post Conviction Hearing)." In this lengthy petition (it consumes over eighteen pages of the record) Garner at the end thereof, after the word "Summary," writes:

"Briefly stated: The defendant alleges that he was denied a fair and impartial trial because certain of his absolute constitutional rights was violated.

1. That he was denied the Equal Protection and Due Process of the laws, guaranteed to him by the Fourteenth Amendment, in that the jury which returned his indictment and the jury which tried him was illegally constituted since Negroes was (were) systematically, arbitrarily and intentionally excluded from service.

2. That he was denied the right to counsel and due process of law as guaranteed by the Sixth and Fourteenth Amendments in that his counsel was given insufficient amount of time in which

to prepare his defense, because of this, the defendant was denied the effective assistance of counsel.

3. That he was denied counsel at a critical stage of the proceeding; namely, the preliminary hearing, and such was a violation of his rights under the Sixth (6th) and Fourteenth (14th) Amendments.

4. That, petitioner be released from prison on the basis of the violations of the petitioner's constitutional rights as heretofore set forth.

5. That, petitioner be granted a new trial on the basis of the violations of the petitioner's constitutional rights as heretofore set forth.

6. For such other and further relief as to the court may seem just and proper.

WHEREFORE, it is now submitted that the defendant's life sentence should be vacated and set aside. So thus this brief (Petition) is submitted in good faith and the defendant will forever pray."

Apparently this petition was amended by the filing on 27 June 1969 of an amendment in the following language:

"The petitioner, William Nathan Garner, hereby amends to the original petition filed in this cause, said petition having been filed in the office of the Clerk of the Superior Court of Granville County on January 9, 1968, as follows:

By adding Section D. to said original petition on page 12 thereof, Section D. to read as follows: 'That at the trial of the trial of petitioner's case in April, 1964, that the petitioner pleaded guilty and at such time to have exercised his right of a trial by jury as guaranteed him under the Sixth Amendment to the Federal Constitution he would have had to accept the risk of the death penalty.'

In all other respects the petition of the petitioner heretofore filed is hereby in all respects ratified.

This the 26 day of June, 1969."

Under date of 29 June 1969 (there is no filing date shown), Judge Bailey entered an order which indicates that before the filing date of the foregoing amendment, he heard the matter at the April 1969 Session of the Superior Court of Granville County. This order of Judge Bailey reads as follows:

"This cause coming on to be heard and being heard before the undersigned Judge Presiding at the April, 1969, Session of the

·Superior Court of Granville County, by virtue of a Petition heretofore filed in this cause by the petitioner, William Nathan Garner, under the provisions of G.S. 15-217, et seq. and amendments thereto; it appearing wherein the petitioner alleges that certain of his constitutional rights were violated in the trial of the case at the April, 1964 Criminal Session of the Superior Court of Granville County and wherein the defendant received the sentence of life imprisonment for the charge of murder in the first degree and the petitioner was personally present in court with his counsel, R. Gene Edmundson, and the State being represented by the Honorable W. H. S. Burgwyn, Jr., Solicitor of this district and after hearing arguments by counsel for the petitioner and counsel for the State the court finds the following facts:

That the first three contentions set forth in the petition filed herein have been adjudicated at a prior hearing the same having been determined adversely to the petitioner and been denied and certiorari to the Court of Appeals to the State of North Carolina in regard to same were denied.

That at the time the petitioner plead guilty, to have exercised his right of trial by a jury under the Sixth Amendment of the United States Constitution he would have had to accept the risk of the death penalty.

That the petitioner was warned at this hearing that if the petitioner was retried he could get the death penalty and·· notwithstanding he pursued his contention, that his plea of guilty was coerced by the possibility of the death penalty. On the authority of the case of *U. S. v. Charles Jackson, et al*, 390 U.S. 570; 20 L Ed 2d 138, 88 S Ct — (argued December 7, 1967, decided December 8, 1968) ; said contention is sustained;

NOW, THEREFORE, it is hereby Ordered, Adjudged and Decreed that William Nathan Garner be granted a new trial,

This the 29th day of June, 1969."

To the signing of the foregoing order, the State gave notice of appeal. Thereafter, certiorari was allowed by this Court.

In the case of *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968), cited by Judge Bailey as authority for granting a new trial, the punishment under the Federal Kidnapping Act, 18 U.S.C., § 1201(a), was "(1) by death if the kidnapped person has not been liberated unharmed, and *if the verdict of the jury shall so recommend,* or (2) by imprisonment for any

term of years or for life, if the death penalty is not imposed." (Emphasis Added.) The Court held, in substance, that because the only way that death could be imposed was by the jury on a not guilty plea while upon a plea of guilty, death could not be imposed; this needlessly encouraged a defendant to plead guilty instead of taking a chance of the jury imposing the death sentence.

Under our statute, G.S. 14-17, the punishment imposed by law, not the jury, for first degree murder is death. The jury does not impose the sentence of death. However, the Legislature has given the jury the right to extend mercy to one guilty of first degree murder in the following language: "Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury." G.S. 14-17.

Under the Federal Kidnapping Act, only the jury could impose the death penalty. Under G.S. 14-17, the statute imposes the death penalty, and the jury can give life imprisonment in lieu of death.

The Legislature provided another way a defendant could escape the full penalty of the law for his crime under G.S. 15-162.1 (repealed in 1969 but which was in effect in 1964). When Garner entered his plea of guilty to murder in the first degree, the defendant could, upon being charged with murder in the first degree, "after arraignment, tender in writing, signed by such person and his counsel, a plea of guilty of such crime; *and the State, with the approval of the court, may accept such plea. Upon rejection of such plea, the trial shall be* upon the defendant's plea of not guilty, and such tender shall have no legal significance whatever." (Emphasis added) G.S. 15-162.1(a).

Under G.S. 15-162.1(b), it was provided:

"In the event such plea is accepted, the tender and acceptance thereof shall have the effect of a jury verdict of guilty of the crime charged with recommendation by the jury in open court that the punishment shall be imprisonment for life in the State's prison; and thereupon, the court shall pronounce judgment that the defendant be imprisoned for life in the State's prison."

Under G.S. 15-162.1(a), the defendant could only tender the plea, and in such event the statute gave the prosecuting officer for the State and the judge, acting together, the authority to accept the plea and thus give life imprisonment in lieu of death. In effect, the defendant could bargain with the judge and solicitor for life imprisonment. The law required that death is his punishment. The

law gave him two opportunities to escape death; one by the jury recommending life imprisonment, the other by obtaining the approval of the State and the judge to accept a plea of guilty.

Under our statute, a defendant had no right to *plead* guilty; his right under the law was to plead not guilty, which gave him his constitutional right to a trial by jury. The fact that he was given the right to tender to the State a plea of guilty, which, if accepted by the State and the judge mitigated the statutory punishment, did not coerce him to plead guilty. In other words, it was possible for him to obtain lesser punishment by tendering his plea of guilty if he succeeded in obtaining the approval of the judge. He could not receive a greater punishment than that provided by the statute if he exercised his constitutional right to trial by jury. To hold under these circumstances that it is coercion for a defendant to plead guilty in order to obtain a lesser sentence than that provided by law for the crime with which he is charged, would effectively prohibit the prosecuting officer for the State from accepting on any charge any plea by any defendant to a lesser included offense which carried a lesser penalty.

The Legislature provides and permits different punishment for different crimes. The Legislature is the voice of the people of North Carolina. When the Legislature provides differing degrees of punishment for different crimes, it cannot be logically said that in so doing, it is improperly coercing a defendant who is charged with a more serious crime to plead guilty to a lesser included crime for which the people of North Carolina have provided a lesser degree of punishment. Moreover, the plea of guilty by the defendant in this case was both voluntarily and intelligently entered. See *Parker vs. North Carolina*, 38 U.S.L.W. 4371 (U.S. 4 May 1970).

[2]    We hold that our statute is distinguishable from the Federal Kidnapping Act and that a plea of guilty tendered and accepted pursuant to the provisions of G.S. 15-162.1, prior to its repeal in 1969, nothing else appearing, does not constitute coercion. Under our statute, the defendant is not penalized for exercising his right to trial by jury. He can receive a sentence of life imprisonment by grace from the jury or by pleading guilty to his crime, in writing, and obtaining the approval of the State and the judge.

In the case of *State v. Roseboro*, 276 N.C. 185, 171 S.E. 2d 886 (1970), although the defendant was tried by a jury and found guilty of murder in the first degree, we think that the following statement by Justice Higgins is appropriate in this case:

"At the time the offense was committed and the indictment was

returned in this case, G.S. 15-162.1 was in effect. The section permitted a defendant in a capital case to tender to the court a written plea of guilty to the charge and if the solicitor for the State agreed to accept the plea, and the presiding judge approved, the acceptance had the effect of a verdict of guilty with a recommendation that the punishment should be imprisonment for life in the State's prison. The section was repealed effective March 15, 1969, eight months after the indictment was returned, but 43 days before the trial. The defendant never at any time tendered or attempted to tender to the State any written plea of guilty to the charge. Nevertheless, the defendant argues that G.S. 15-162.1 abolished capital punishment in North Carolina. The defendant cites as authority the Supreme Court decision in *United States v. Jackson*, 390 U.S. 570, and the United States Court of Appeals Fourth Circuit decision in *Alford v. North Carolina*, 405 F. 2d 340.

This Court has repeatedly held that G.S. 15-162.1 (Chapter 616, Session Laws of 1953) did not alter G.S. 14-17. The 1953 Act offered a means by which a defendant charged with a capital felony and his counsel were permitted to tender the plea of guilty, which plea, if and when accepted, had the effect of a conviction with a recommendation that the punishment be imprisonment for life in the State's prison. Neither the prosecutor nor the judge was under any obligation to accept the plea. Clearly, until the plea was offered and accepted, the offer was without legal effect. The Act provided: 'Upon rejection of such plea (and of course if it was never tendered) the trial shall be upon the defendant's plea of not guilty, and such tender shall have no legal significance whatever.' The repeal in 1969 neither added to, nor took from, G.S. 14-17. As stated by Justice Lake in *State v. Atkinson, supra,* the section, G.S. 14-17 '. . . is capable of standing alone'. We do not interpret *United States v. Jackson, supra,* as deciding that capital punishment for first degree murder is abolished in North Carolina by G.S. 15-162.1. In *Alford v. North Carolina, supra,* the United States Court of Appeals for the Fourth Circuit apparently attempted to pass on the validity of G.S. 14-17 and hold the death penalty invalid. A charge of murder in the first degree includes murder in the second degree and manslaughter. In the *Alford* case the defendant entered a plea of guilty of murder in the second degree and was sentenced to a prison term. We consider the decision neither authoritative nor persuasive."

The defendant in this case entered a written plea of guilty. There

is no finding by Judge Bailey that the defendant's act in entering a written plea of guilty was motivated by fear. The finding is that the defendant was warned by Judge Bailey (rightly or wrongly, we do not now decide) that he could get the death penalty upon a retrial, and the defendant insisted that he wanted to be tried again and contended "that his plea of guilty was coerced by the possibility of the death penalty."

On the hearing of this matter the defendant testified:

"I understand that if I am given a new trial that the jury no longer has the option to give me a life sentence but that if they find me guilty of murder in the first degree the court has no choice but to sentence me to die, and I want to take my chance on that."

The defendant was wrong in his "understanding" because G.S. 14-17 is still in effect, and no changes have been made therein since 1964 when the defendant was first tried. We think the defendant's own testimony negatives the fact that he was coerced by the possibility of the death penalty when he entered his plea.

We fail to see how the defendant could have been coerced by the possibility of the death penalty in 1964 and not coerced by the possibility of the same death penalty in 1969. The same law with respect to the punishment for first degree murder is still in effect. Could the defendant have an ulterior reason for contending that he was coerced in 1964 when he entered his plea, such as the death of material State's witness or the loss of other evidence by the State, or could there be some other reason that would cause the defendant to be unafraid of the death penalty now after the passage of these years?

It is common knowledge that a defendant is entitled to a speedy trial. The State is likewise entitled to a speedy trial. We do not think that a defendant, under these circumstances, should be permitted to have a new trial.

[2]   We are of the opinion that *United States v. Jackson, supra,* is distinguishable from this case. We are also of the opinion and so hold that the punishment for murder in the first degree as contained in G.S. 14-17, does not constitute coercion in fact so as to render void Garner's plea to murder in the first degree, pursuant to the provisions of G.S. 15-162.1 as it existed prior to its repeal in 1969.

The order entered by Judge Bailey in granting the defendant a new trial is reversed.

Reversed.

MORRIS and HEDRICK, JJ., concur.