THOMAS WOODROW DIXON, PETITIONER v. STATE OF NORTH CAR-
OLINA, RESPONDENT

No. 6918SC544

(Filed 24 June 1970)

**Criminal Law §§ 23, 135;   Homicide § 13—   first-degree murder —
guilty plea — coercive effect of death penalty**

On post-conviction hearing to review the constitutionality of defend-
ant's sentence of life imprisonment imposed upon his plea of guilty to
first-degree murder, which plea was entered after defendant's attorney
had explained to defendant the alternatives available to him and the
possible consequences of those alternatives, the court properly found,
upon sufficient evidence, that defendant's plea of guilty was freely and
voluntarily entered; and there was no merit to defendant's argument
that the death penalty constituted a coercive effect upon defendant so
as to render his guilty plea under [former] G.S. 15-162.1 involuntary.

ON certiorari to review the judgment of *Shaw, J.,* at the 15 May
1969 Session of GUILFORD Superior Court.

The petitioner was tried in the Superior Court of Guilford
County, North Carolina, in July 1962 on a valid bill of indictment
charging him with first degree murder. After the State had presented
its evidence and rested its case, the petitioner, under the provisions
of G.S. 15-162.1, entered a plea of guilty to murder in the first de-
gree, and the Honorable Frank M. Armstrong, Judge presiding, en-
tered judgment that the defendant be imprisoned for life.

On 19 March 1969, in the Superior Court of Guilford County, the
petitioner was afforded a plenary hearing before the Honorable Eu-
gene G. Shaw who entered the following judgment:

"JUDGMENT DENYING PETITION IN          FILED:

POST CONVICTION HEARING CASE          3/20/69

"This cause coming on to be heard, and being heard on this the
19th day of March, 1969, in the Guilford County Courthouse at
a Session of the Superior Court of Guilford County by the un-
dersigned Resident Judge of the Superior Court.

"The petitioner and his court-appointed attorney, Benjamin
D. Haines, were present and each announced that they were
ready for this trial. The Assistant Solicitor, E. Steve Schlosser,
Jr., was present and announced his readiness for this trial.

"The Court had Mrs. Marie Hall, who is one of the official
court reporters of Guilford County, present and had her take
down the evidence to the end that she might, in due course, sub-
mit a transcript thereof to the Court. Mrs. Hall has now sub-

mitted a transcript of the evidence to the Court and, after having read and studied the contents of the evidence, the Court now renders its decision.

"The Court finds and determines that this is a proceeding instituted by the petitioner herein under Article 22 of Chapter 15 of the General Statutes known as the Post Conviction Hearing Act by filing a petition herein on the 21st day of January, 1969. The Solicitor of this Solicitorial District filed an answer on the 14th day of March, 1969. The petitioner's court-appointed attorney was appointed on February 20, 1969.

"The Court finds and determines that the petitioner, in his petition or at this trial, after being duly sworn, testified or stated and contended in open court that his legal or constitutional rights were denied or violated before, during and after his trial before the Honorable Frank M. Armstrong, Judge Presiding on the 9th day of July, 1962.

"The defendant contends that during his trial before Judge Frank M. Armstrong on the 9th day of July, 1962, his constitutional rights under the Fifth and Sixth Amendments of the Constitution of the United States were violated.

"The defendant further contends that G.S. 15-162.1, under which he was permitted to enter a plea of guilty of murder in the first degree, is unconstitutional.

"The Court asked the petitioner and his attorney if the petitioner asserts or contends that there were any other denials or violations of his constitutional or other legal rights before, during or after said trial, and the petitioner and his attorney each answered that there were none.

"The Court heard the petitioner and his attorney and heard and considered all the competent evidence offered by the petitioner and the State, and at the conclusion of the evidence the petitioner, his attorney and the Solicitor for the State each stated that they had no further or other evidence they desired the Court to consider.

"In consideration of all the competent evidence offered and considering the arguments of counsel, the Court finds the facts in this case to be as follows:

## "FINDINGS OF FACT

"1.  That the defendant petitioner was duly arraigned in the

Superior Court of Guilford County on a bill of indictment returned by the grand jury of Guilford County at the June 11, 1962, Criminal Session of the Superior Court of said County charging that the defendant petitioner, Thomas Woodrow Dixon, on the 12th day of May, 1962, with force and arms, at and in said County, feloniously, willfully, premeditatedly and deliberately, and of his malice aforethought, did kill and murder Edward Ford against the form of the statute in such case made and provided, and against the peace and dignity of the State.

"2.  At his arraignment in the Superior Court the defendant entered a plea of not guilty of the crime charged in said bill of indictment and elected on said plea of not guilty to have the jury pass upon and determine his guilt or innocence.

"3.  On July 9, 1962, Frank M. Armstrong, Judge Presiding over the Guilford Superior Court, issued over his hand an order and directed that fifty names be summoned to act as jurors or so many of them as may be necessary so to do in the trial of this action. Said order directed that such number of persons, freeholders, qualified to act as jurors from the body of said county to be and appear at the Courthouse in the City of Greensboro, Guilford County, North Carolina, at 10:00 A.M. on the 10th day of July, 1962, to the end that so many of them may be chosen, sworn and impaneled may act as jurors in said action. In due course, the Sheriff returned to the court a list containing the names of fifty jurors.

"4.  That, from the panel of regular jurors drawn for the July 9, 1962, Criminal Session of the Superior Court of Guilford County and from the special venire of fifty jurors so drawn, the Solicitor for the State and counsel for the Defendant finally selected a panel of 12 jurors and one alternate juror to try the case.

"5.  That the defendant petitioner was represented by Luke Wright and Karl N. Hill, Jr., who are able, capable and experienced lawyers of the Greensboro Bar and are men of great ability who were employed by the father of the defendant petitioner to represent said defendant petitioner and who did represent said defendant petitioner in an able and diligent manner after having had time to prepare and adequately and properly present said case for trial.

"6.  That the State of North Carolina and the defendant petitioner proceeded with the selection of the jury which con-

sumed all of the first day of the trial and the State commenced its introduction which lasted until Thursday, July 12, 1962. At the Thursday session the defendant, together with his father, his wife and step-mother, had a conference with Mr. Hill and Mr. Wright in the lawyers' room and at that time the defendant petitioner expressed himself as not in favor of entering a plea of guilty of murder in the first degree. It appears from the transcript that the defendant would have been willing to enter a plea of guilty of murder in the second degree, but the Court had indicated that it would not accept the tender of such plea.

"Thereupon the trial continued and the State completed its evidence, at which time counsel asked the Court to indulge the defendant for a few minutes for a further conference with his counsel and his father, his wife and his step-mother. At that conference, Mr. Wright pointed out to the defendant petitioner that in his opinion the defendant was going to be convicted of something and there was some possibility that he could be convicted of murder in the first degree without any recommendation being made by the jury and the Judge would have to impose the death sentence. Mr. Wright also pointed out that the jury could convict the defendant of murder in the first degree and recommend mercy, in which event his punishment would be limited to life imprisonment. Mr. Wright also pointed out that the jury could convict the defendant petitioner of murder in the second degree, but Mr. Wright explained there was no guarantee of a second-degree verdict.

"Analyzing the effect of the two pleas of guilty of first-degree murder and second-degree murder, Mr. Wright then explained that if a plea of murder in the first degree was submitted to and accepted by the Court, the punishment would be limited to life imprisonment; that, as a matter of fact, if the defendant was of good behavior during his imprisonment he might look forward to a parole or release from prison in about ten years.

"Mr. Wright then explained that if a verdict of murder in the second degree should be returned it is probable that Judge Armstrong would impose a sentence of thirty years against the defendant, in which event, upon a showing of good behavior, the defendant might look forward to a parole or release from imprisonment in about seven and one-half years.

"According to Mr. Wright's analysis of contemplated judgment to be imposed by the Court, in either case it appeared that there was only a difference of two and one-half years between a plea

of guilty of murder in the first degree and guilty of murder in the second degree. That is, of course, if Mr. Wright had correctly analyzed what the Court might do in the event of either plea. Mr. Wright assured the defendant petitioner and his relatives present that he, Mr. Wright, stood ready to continue with the trial of the case and to render to the defendant his best professional efforts.

"The defendant, in considering the effect of the two pleas which he might enter, inquired from his relatives present what they thought he should do. His father advised him to plead guilty and his wife gave him similar advice and then he said he would enter a plea of guilty of murder in the first degree. By way of summary it was Mr. Wright's opinion that from a standpoint of punishment there would likely be only a difference of two and one-half years resulting from a plea of guilty of murder in the first degree and a plea of guilty of murder in the second degree.

"7. The tender of plea was signed by Thomas Woodrow Dixon and his counsel, Luke Wright, and stated that the undersigned, Thomas Woodrow Dixon, having been arraigned on a bill of indictment pending in said Court charging him with the crime of murder in the first degree on the 12th day of May, 1962, and being fully advised by his undersigned counsel, Luke Wright, privately retained by the defendant to represent him in this case, hereby tenders to the State his plea of guilty of murder in the first degree and said bill of indictment with full knowledge that in the event of the acceptance of his plea by the State, with the approval of the Court, the legal effect will be the same as a jury verdict of guilty of murder in the first degree with recommendation by the jury in open court that the punishment be imprisonment for life in the State's prison and that the judgment be pronounced in the event of such acceptance of his said plea now tendered will be a judgment that he be confined in the State's prison for the full term of his natural life. The plea was accepted by Edward K. Washington, Solicitor of the Twelfth Solicitorial District of North Carolina, and was approved by Frank M. Armstrong, Judge Presiding.

"That the tender of plea so signed by the defendant petitioner stated that it was executed with the full knowledge that in the event of the acceptance of his plea by the State, with the approval of the Court, the legal effect would be the same as a jury verdict of guilty of murder in the first degree with recom-

mendation by the jury in open court that the punishment be imprisonment for life in the State's Prison and that judgment accordingly would be entered against the defendant by the Presiding Judge. The Court finds that the plea thus submitted by the defendant was submitted with full knowledge of all the facts after he had entered a plea of not guilty at his arraignment and when the case was first called for trial; that said plea was not demonstably [sic] coerced by anyone but was entered voluntarily by the defendant. It is apparent that the defendant endeavored to secure the approval of the court of a plea of guilty of murder in the second degree as shown by the statement of the defendant (on page 29 of the transcript) about the possibility of entering a plea in this case before he actually entered a plea. At the bottom of the page, Mr. Dixon stated that he was trying to get them (the Solicitor) to accept a plea of second degree. He stated that he believes the Court was asked about that. He also stated that he asked a couple of times to see if he couldn't get it. Those negotiations were taking place while the State was putting on its evidence and before the point in the trial when the State rested its case. The defendant stated that he could not remember shooting Mr. Ford at that time, and as a matter of fact he still does not remember it.

"8. That, after said plea of guilty, said defendant petitioner was lawfully sentenced by the Honorable Frank M. Armstrong, Judge of the Superior Court, who was present and presiding at such session of court, to be imprisoned in the State's Prison for the term of his natural life; that a commitment dated July 12, 1962, was duly and properly issued and the petitioner began to serve said sentence and is now imprisoned thereunder and is serving said sentence in the State Prison System.

"9. That said sentence for the full term of his natural life imposed by the Court upon the defendant is not in excess of that permitted by law.

"10. That a transcript of the prior trial is not necessary for a proper determination of this matter.

"Based upon the foregoing findings of fact, the Court is of the opinion and finds and concludes as a matter of law:

"1. That the petitioner, Thomas Woodrow Dixon, had a fair and impartial trial and none of his constitutional or other rights were denied or violated in any respect before, during and after his trial at the July 9, 1962, Criminal Session of the Superior Court of Guilford County.

"2. That the petition and motion of the petitioner for his release and a new trial should be denied and dismissed.

"3. That the said petitioner is imprisoned by virtue of a legal and final judgment of a court of competent jurisdiction; that he is not unlawfully restrained of his liberty; that the time during which he may be legally detained has not expired; and that he should be remanded to the custody of the North Carolina Department of Correction.

\*          \*          \*

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED and the Court holds, rules, and adjudges as follows:

"1. That the petitioner, Thomas Woodrow Dixon, had a fair and impartial trial and none of his constitutional or other rights were denied or violated in any respect before, during or after his trial at the July 9, 1962, Criminal Session of the Superior Court of Guilford County on the said bill of indictment bearing Docket No. 13676.

"2. That the said petition and motion of the petitioner for his release and a new trial are hereby denied and dismissed.

"3. That the said judgment and sentence of the Court entered at the July 9, 1962, Criminal Session of the Superior Court of Guilford County is legal, valid and proper and was entered in full compliance with due process of law; was rendered by a court of competent jurisdiction, and the same is in all respects ratified, confirmed, and approved, and that the petitioner's imprisonment thereunder is legal, valid and proper and is in full compliance with the provisions of the Constitution of the United States and the laws and Constitution of the State of North Carolina.

"4. That the petitioner be, and he is hereby remanded to the custody of the North Carolina Department of Correction immediately to serve and complete as provided by law the said sentence as heretofore imposed.

"5. It is further ordered that one copy of the judgment be forwarded by the Clerk of Superior Court of Guilford County to each of the following: the Director of the North Carolina Department of Correction; the Solicitor of this District; the Attorney General of North Carolina; the petitioner herein, and

to Benjamin D. Haines, Attorney at Law, who represented the petitioner at this hearing.

"This the 15th day of May, 1969.

> "EUGENE G. SHAW
> Resident Judge of the Superior
> Court, 18th Judicial District
> of North Carolina."

*Robert Morgan, Attorney General, and Jean A. Benoy, Deputy Attorney General, for the State.*

*Benjamin D. Haines for the petitioner appellant.*

HEDRICK, J.

The petitioner's sole contention is that *United States v. Jackson,* 390 U.S. 570 (1968), applies to North Carolina procedure and that the death penalty, in conjunction with G.S. 15-162.1, creates a fear and threat of the imposition of the death penalty in a defendant and constitutes a coercive effect upon a defendant sufficient to render any plea he tenders involuntary. The defendant cites the case of *Alford v. North Carolina,* 405 F. 2d 340 (4th Cir. 1968), in support of this proposition.

The United States Supreme Court, in the recent case of *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970), held that *Jackson, supra,* did not render all pleas of guilty entered to avoid the death sentence involuntary, *per se.* White, J., speaking for the majority, said:

> "Plainly, it seems to us, *Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson* prohibits the imposition of the death penalty under § 1201(a), but that decision neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.' See *Boykin v. Alabama,* 395 U.S. 238, 242, 23 L Ed 2d 274, 279, 89 S Ct 1709 (1969)."

The Supreme Court went on to state that the plea of guilty is more than merely an admission of past conduct; it is the defendant's consent that a judgment of conviction may be entered against him without a trial. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient

awareness of the relevant circumstances and likely consequences."
Although agents of the State cannot produce a plea by actual or
threatened physical harm or by mental coercion which overbears
the will of the defendant, it is proper for the State to encourage pleas
of guilty at every important step in the criminal process. "For some
people, their breach of a State's law is alone sufficient reason for sur-
rendering themselves and accepting punishment. For others, appre-
hension and charge, both threatening acts by the Government, jar
them into admitting their guilt. In still other cases, the post-indict-
ment accumulation of evidence may convince the defendant and his
counsel that a trial is not worth the agony and expense to the de-
fendant and his family." All of these circumstances which produce
guilty pleas are valid even though the State has produced the pri-
mary factors which encouraged the defendant to enter the plea.

Justice White went on to set out the standard to be used to de-
termine the voluntariness of a defendant's plea. It is:

"The standard as to the voluntariness of guilty pleas must be
essentially that defined by Judge Tuttle of the Fifth Circuit
Court of Appeals:

" '[A] plea of guilty entered by one fully aware of the direct
consequences, including the actual value of any commitments
made to him by the court, prosecutor, or his own counsel, must
stand unless induced by threats (or promises to discontinue im-
proper harassment), misrepresentation (including unfulfilled or
unfulfillable promises), or perhaps by promises that are by their
nature improper as having no proper relationship to the pros-
ecutor's business (e. g. bribes).'

"Under this standard, a plea of guilty is not invalid merely be-
cause entered to avoid the possibility of a death penalty."

In *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90
S. Ct. 1458 (1970), a companion case to *Brady, supra,* the defendant
asked the Supreme Court to hold his guilty plea involuntary and
invalid because it was induced by a North Carolina statute provid-
ing a maximum penalty in the event of a plea of guilty lower than
the penalty authorized after a guilty verdict and because the plea
was the product of a coerced confession. In holding the defendant's
plea valid, the Court said:

"It may be that under *United States v. Jackson,* 390 US 570,
20 L Ed 2d 138, 88 S Ct 1209 (1968), it was unconstitutional
to impose the death penalty under the statutory framework
which existed in North Carolina at the time of Parker's plea.

Even so, we determined in *Brady v. United States*, 397 U.S. 742, 25 L Ed 2d 747, 90 S Ct 1463, that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial. In this respect we see nothing to distinguish Parker's case from Brady's."

See also *Garner v. State*, 8 N.C. App. 109, filed 27 May 1970.

Clearly, from the holdings handed down in the three cases cited above, there was nothing in the present case which would render the guilty plea invalid. Judge Shaw found as a fact that the plea of guilty was entered freely and voluntarily and was not in any way coerced.

We hold that the findings and conclusions made by Judge Shaw after the defendant's post conviction hearing are supported by the evidence, and the judgment entered on 20 March 1969, denying the petitioner a new trial, is affirmed.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.